UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────

JUANA MORALES,

                    Plaintiff,

          - against -                         10 Civ. 829 (JGK)

                                              MEMORANDUM OPINION AND
CITY OF NEW YORK DEPARTMENT OF                      ORDER
JUVENILE JUSTICE,

                    Defendant.
─────────────────────────────────

JOHN G. KOELTL, District Judge:

     This is an action by the pro se plaintiff Juana Morales

("Morales") against her former employer, the defendant the New

York City Department of Juvenile Justice ("DJJ").  Morales

alleges discrimination and retaliation against her by the DJJ on

the basis of race, gender, color, national origin, age and

disability status, in violation of Title VII of the Civil Rights

Act ("Title VII"), 42 U.S.C. § 2000 et seq., the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et

seq., the Americans with Disabilities Act, 42 U.S.C. § 12112 et

seq., the Equal Pay Act, 29 U.S.C. § 201 et seq., the Health

Insurance Portability and Accountability Act ("HIPAA"), 29

U.S.C. § 1182, and the New York State Human Rights Law

("NYSHRL") and New York City Human Rights Law ("NYCHRL").  The

DJJ now moves to dismiss the complaint pursuant to Rule 12 of

the Federal Rules of Civil Procedure.


                              I.

     The following facts are undisputed unless otherwise noted:

The plaintiff alleges that she was hired as a Special Officer by the DJJ[1] in August 2005, and was assigned to work at the Crossroads Detention Center. (Third Am. Compl. ("TAC"), at 4.) She alleges that, when she worked overtime shifts, she was assigned to work with Senior Special Officer Sgt. Cynthia Mickens-Hines. (TAC, at 4.)

The plaintiff alleges that, in January, 2006, Mickens-Hines asked her to falsify an incident report in order to protect Mickens-Hines' husband from a disciplinary infraction, but the plaintiff refused to do so. (TAC, at, 4.) The plaintiff alleges that, in the wake of this refusal, she was treated in a harassing and discriminatory manner by Mickens-Hines and other officers for at least one year. The plaintiff alleges that Mickens-Hines made disparaging remarks to her and treated her in a demeaning manner, and that Mickens-Hines and the DJJ systematically afforded better treatment to African-American officers. The plaintiff alleges that she was forced to work longer hours and to take meals and breaks last, and that she was paid less than her union contract and the City Office of Labor Relations Salary Table required, while African-American officers were paid correctly. (TAC, at 4.) The plaintiff also alleges that she was written up on false or meritless infractions, while African-American officers were not written up for similar or

---

[1] After the events at issue in this case, the DJJ was merged into the City Administration for Children's Services.

more egregious infractions.  (TAC, at 4.)  The plaintiff also
alleges that Mickens-Hines gave male officers preferential
treatment in work assignments and time off.  (TAC, at 5.)  The
plaintiff alleges that these incidents occurred between 2006 and
2008.  (TAC, at 4-5.)

The plaintiff alleges that she first complained about
Mickens-Hines to her superiors, including Director of Support
Services Vick, on August 23, 2006.  (TAC, at 4.)  The plaintiff
met with Director Vick, among others, to discuss her complaint,
and Vick represented that he had forwarded the plaintiff's
complaint to Equal Employment Opportunity officer Tonya Haynes.
(TAC, at 4.)  The plaintiff alleges that EEO Officer Haynes
asked the plaintiff for more information, and the plaintiff
provided a three page summary of the dates and times of
incidents of harassment.  (TAC, at 4.)  In September, 2006,
Officer Haynes dismissed the EEO complaint as insufficient.
(TAC, at 4.)  The plaintiff alleges that no action was taken in
response to her complaint, and that the information provided in
her complaint was revealed to Mickens-Hines, leading to further
harassment.  (TAC, at 4-5.)  The plaintiff also alleges that,
after she filed her complaint, she was sexually harassed by
Director Vick, and that, when she reported this harassment to
EEO Officer Haynes, Haynes "refused to acknowledge" it.  (TAC,
at 5.)  The plaintiff asserts that Haynes and Vick are both
African-American.  (TAC, at 5.)

The plaintiff alleges that, in addition to the allegations of harassment already described, and in an attempt to get the plaintiff fired, Mickens-Hines convinced a subordinate officer to file a sexual harassment complaint against the plaintiff in April, 2008. (TAC, at 4-5.) The plaintiff alleges that this complaint was unsubstantiated, and that she and other Hispanic officers were not interviewed in the subsequent investigation by the EEO officer. The plaintiff alleges that this false report was filed by Mickens-Hines in retaliation for the plaintiff's reporting Mickens-Hines' "[c]orruption." (TAC, at 5.)

The plaintiff further alleges that she sustained a knee injury on July 17, 2008. She alleges that, when she attempted to return to work on May 30, 2009, DJJ would not let her do so, claiming that she was not mentally fit to return to duty. (TAC, at 5.) The plaintiff alleges that, in the context of a New York State Department of Human Rights administrative hearing on her complaint of discrimination, she signed a medical release form allowing the City to obtain her mental health records. (TAC, at 5.) The plaintiff alleges that these records were then turned over to an attorney for the DJJ, and that the DJJ then used these records to discriminate against her based on her mental health history and status, and to prevent her from returning to work. (TAC, at 5.) The plaintiff alleges that, when she was finally able to return to work, she was subjected to further harassment. (TAC, at 5.)

The plaintiff filed a discrimination claim against the DJJ with the New York State Department of Human Rights ("NYSDHR") in August, 2007, alleging discrimination on the basis of race and national origin, and also alleging retaliation.  (TAC, at 3; see also Pl.'s Mem., Ex. A ("NYSDHR Compl."), at 1-2.)  The ALJ in that action dismissed the complaint in April, 2009.  (TAC, at 3; see also Carpenter Aff. Ex. B ("NYSDHR Decision"), at 8.)   The plaintiff requested a review of her complaint by the Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued the plaintiff a right-to-sue letter in December, 2009.  (See TAC, at 7 (Right to Sue Letter).)

The plaintiff filed this lawsuit in February, 2010.[2]  Her Amended Complaint was filed in May, 2010, and her Second Amended Complaint was filed in August, 2010.  In July, 2011, the Court granted the plaintiff's motion for leave to file a Third Amended Complaint, noting that any successful motion to dismiss the third amended complaint would be with prejudice.  See Memorandum Opinion Dated June 14, 2011, Docket No. 40.  The DJJ then moved to dismiss the Third Amended Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure.

---

[2]  Morales filed two other cases against the DJJ in August, 2010. See Complaint, Morales v. Dep't of Juvenile Justice, No. 10 Civ. 6018, Docket No. 2; Complaint, Morales v. Dep't of Juvenile Justice, No. 10 Civ. 6017, Docket No. 2.  The allegations in those actions appear to be substantially similar to the allegations in the current case.  However, there have been no answers, and no motions, in those actions, and they are not before the Court at this time.

II.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.2007); Arista Records LLC v. Lime Grp. LLC, 532 F. Supp. 2d 556, 566 (S.D.N.Y.2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.; see also SEC v. Rorech, 673 F. Supp. 2d 217, 221 (S.D.N.Y. 2009).

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in

bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Rorech, 673 F. Supp. 2d at 221.

### III.

### A.

The DJJ argues initially that the plaintiff's claims of gender, age and disability discrimination must be dismissed because the plaintiff has failed to exhaust her administrative remedies with respect to those claims.

Exhaustion of administrative remedies—by filing an administrative complaint with an entity like the NYSDHR—is a requirement under Title VII, the ADA, and the ADEA, and claims that were not raised in the administrative proceeding, or are not "reasonably related" to claims that were raised in the administrative proceeding, are barred, and should be dismissed on a motion pursuant to Rule 12 of the Federal Rules of civil procedure. See generally Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993), superceded by statute on other grounds, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1072; see also Terry v. Ashcroft, 336 F.3d 128, 151 (2d Cir. 2003) ("[T]he administrative exhaustion requirement is the same under the ADEA

as it is under Title VII . . . .");  J.C. v. Reg'l Sch. Dist. 10,
Bd. of Educ., 278 F.3d 119, 124 (2d Cir. 2002) ("[T]he ADA . . .
requires parties to exhaust administrative processes prior to
litigation.");  see also Crespo v. N.Y.C. Transit Auth., No. 01
Civ. 671, 2002 WL 398805, at *5 (E.D.N.Y. Jan. 7, 2002)
(dismissal for failure to exhaust discrimination claims is
proper pursuant to Rule 12(b)(6)).

In her August, 2007 NYSDHR Complaint, Morales checked off
three of the boxes in the "basis" section of the NYSDHR's
complaint form: race, national origin, and retaliation.  (NYSDHR
Compl., at 2.)  Morales's description, in that same form, of the
discrimination she faced alleged that "[a]s I am of Hispanic
origin . . . I do believe I am being picked on by Sgt. Mickens."
(NYSDHR Compl., at 2-3.)  Similarly, the administrative law
judge in her NYSDHR case decided that case solely with reference
to Morales's claims of discrimination on the basis of race and
national original, and retaliation.  (See NYSDHR Decision, at
1.)  It is therefore plain that Morales did not raise claims of
gender, age, or disability discrimination in her Administrative
Complaint.  While Morales points out that the last page of her
NYSDHR Complaint contains language referring to the ADA and the
ADEA, and noting that Title VII "covers . . . sex relating to
employment," those references are part of a printed section of
the form advising the complainant that the complaint is being
filed simultaneously with the EEOC whether it is under any or

all of those federal statutes.  (NYSDHR Compl., at 5.)  Nothing
in the substance of the Complaint, or the NYSDHR decision,
indicates that the Complaint that Morales filed alleged
discrimination on the grounds of gender, age, or disability.

     Morales argues that her claims of gender, age, and
disability discrimination are nonetheless "reasonably related"
to the claims of race and national origin discrimination, and of
retaliation that she did raise in her administrative claim.  See
Butts, 990 F.2d at 1401.  Our Court of Appeals has noted that
"reasonably related" claims are those that come "within the
scope of the [administrative] investigation which can reasonably
be expected to grow out of the charge of discrimination."  Id.
at 1402 (internal quotation marks omitted).  "In this inquiry,
the focus should be on the factual allegations made in the
[administrative complaint] itself, describing the discriminatory
conduct about which a plaintiff is grieving." Williams v.
N.Y.C. Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006) (internal
quotation marks and citations omitted).  "The central question
is whether the complaint filed . . . gave that agency "adequate
notice to investigate discrimination on both bases."  Id.
(internal quotation marks and citations omitted).

     Here, the descriptive language in the NYSDHR Complaint
refers only to Morales's Hispanic origin.  (See NYSDHR Compl.,
at 3.)  There is no language which relates to age, gender, or
disability in the NYSDHR Complaint.  Because Morales did not

raise her age, gender, or disability discrimination claims
before the NYSDHR, and because they are not related to the race,
national origin, and retaliation claims that she did raise, she
has not exhausted them.  See, e.g., DiProjetto v. Morris
Protective Serv., 306 F. App'x. 687, 688 (2d Cir. 2009) (summary
order).  Accordingly, Morales's claims of gender, age, and
disability discrimination pursuant to Title VII, the ADEA and
the ADA are dismissed with prejudice.


                              B.

     The DJJ next argues that Morales' race and national origin
discrimination claims under Title VII must be limited to
incidents that occurred after October 16, 2006, 300 days before
she filed her NYSDHR Complaint.

     Under Title VII, before bringing a claim in federal court,
a New York plaintiff must file a charge with the EEOC within 300
days of the alleged discriminatory act. See 42 U.S.C. § 2000e-
5(e)(1); Harris v. City of New York, 186 F.3d 243, 247 (2d Cir.
1999); Sims v. City of New York, No. 08 Civ. 5965, 2010 WL
3825720, at *6 (S.D.N.Y. Sept. 30, 2010).  This statutory
requirement effectively acts as a statute of limitations, and
Title VII claims are barred by the failure to file a timely
charge. See Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708,
712 (2d Cir. 1996).  The filing of a complaint of discrimination
with the NYSDHR is considered to be cross-filed with the EEOC.

Therefore, the date of filing with the NYSDHR is the date for filing with the EEOC for purposes of the statute of limitations. See Govia v. Century 21, Inc., 140 F. Supp. 2d 323, 325 n.1 (S.D.N.Y. 2001).

Here, Morales alleges that the discrimination began in January 2006.  "When, as in this case, a plaintiff's allegations of discrimination extend beyond the 300-day limitations period, the nature of the claim determines what consideration will be given to the earlier conduct." McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 75 (2d Cir. 2010) (quoting Petrosino v. Bell Atl., 385 F.3d 210, 220 (2d Cir. 2004)).  Where a plaintiff alleges "discrete" acts of unlawful discrimination or retaliation, the statute of limitations begins to run when each discrete discriminatory act occurs. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-14 (2002); Coffey v. Cushman & Wakefield, Inc., No. 01 Civ. 9447, 2002 WL 1610913, at *2 (S.D.N.Y. July 22, 2002) (noting that discrete acts falling outside of the statutory period cannot form a basis for relief even if they are related to other actionable conduct that is otherwise not time barred).  Failure to promote, demotion, and termination are all "discrete" incidents of discrimination.  See Morgan, 536 U.S. at 114.  Conversely, because hostile work environment claims involve the combination of multiple incidents and the continuing effect on the conditions of employment, a claim is timely if any act contributing to a pattern of

harassment occurred within 300 days of the filing of the EEOC charge. See Morgan, 536 U.S. at 115, 117; Coffey, 2002 WL 1610913, at *2.

The first issue is whether the plaintiff's NYSDHR Complaint could be read as a plausible hostile work environment claim. A hostile work environment claim involves "repeated conduct" "over a period of time" such that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Morgan, 536 U.S at 115-16. 120 n.12 (internal quotation marks and citation omitted). The second, related issue is whether those allegations supporting a hostile work environment claim that fall within the 300 day period are sufficiently related to those allegations falling without the 300 day period that they could plausibly be construed as part of a single hostile work environment claim. For the purpose of that inquiry, the Court of Appeals for the Second Circuit has explained that the Supreme Court's decision in "Morgan requires courts to make an individualized assessment of whether incidents and episodes [which form the allegations of a hostile work environment claim] are related." McGullam, 609 F.3d at 77. The temporal continuity or discontinuity of the incidents and episodes alleged is a relevant factor in this analysis. See, e.g., id. at 78.

Here, Morales alleges that she experienced a "trail of discriminatory conduct" "[f]or a year," at the hands of her supervisor, Mickens-Hines, after she initially refused Mickens-Hines' request to falsify an incident report.  (TAC, at 4.) Some of Morales' allegations—receiving lower pay and fewer privileges than African-American employees, for example—are the types of "discrete unlawful acts" which might typically be barred if they fall outside the 300 day period.  However, Morales also alleges that she was physically and verbally harassed on the basis of race.  She alleges, for example, that Mickens-Hines "expressed disgust" at Morales's biracial, Hispanic and African-American children, and that Morales was "laughed at several times over that by other Afro-American" employees.  (TAC, at 4.)  In her NYSDHR Complaint, Morales alleged that Mickens-Hines "speaks to me as if I was a child and harasses me," and that Mickens-Hines "picked on" Morales because of her race.  (NYSDHR Compl., at 3.)  She alleges at least one incident where she was physically pushed, and suffered an injury, as part of that harassment.  (TAC, at 4.)  She also alleges that her work was "sabotaged" in one incident, that false claims of sexual harassment and other misconduct were leveled against her, and that she was forced on several occasions to use a different restroom from African-American officers.  (TAC, at 4; NYSDHR Compl., at 3.)

13

Taken together, and reading Morales' complaint with the "special solicitude" due to pro se plaintiffs, see Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted), these allegations plausibly describe the type of pervasive intimidation, ridicule, and harassment "that a reasonable employee would find [altered] the conditions of her employment . . . for the worse."  Terry v. Ashcroft, 336 F.3d at 148 (internal quotations omitted); see also, e.g., Murdaugh v. City of New York, No. 10 Civ. 7218, 2011 WL 798844, at *4 (S.D.N.Y. March 8, 2011) (allegations of racist language and false accusations against the plaintiff were sufficient to state a hostile work environment claim); Cortes v. City of New York, 700 F. Supp. 2d 474, 486 (S.D.N.Y. 2010) (allegations of "physical assault, a pattern of alleged retaliation and mistreatment, and threatening comments" were sufficient to state a hostile work environment claim).

Morales does not state with specificity when these various incidents of harassment occurred, but she does allege that they took place over a temporally continuous period beginning in January, 2006 and lasting for at least one year.  Given that Morales' allegation of persistent harassment by Mickens-Hines over a year long period beginning in January, 2006, it is plausible that some of that harassment took place after October 16, 2006.  Indeed, Morales alleged in her NYSDHR Complaint that

14

the harassment was still ongoing in August, 2007.  (NYSDHR
Compl., at 1.)  Because Morales has pleaded a plausible hostile
work environment claim, part of which falls within the statutory
period, those acts which occurred before October 16, 2006 may be
considered in assessing the DJJ's potential liability under a
hostile work environment theory.  Morgan, 536 U.S. at 115.
However, to the extent that Morales alleges Title VII violations
under discrimination or retaliation theories based on incidents
occurring prior to October 16, 2006, those claims are dismissed
with prejudice.


                                C.

     The defendants next argue that the plaintiff has failed to
state a claim for discrimination or retaliation that is
plausible on its face.

     To state a claim for discrimination under Title VII based
on either race or national origin, the plaintiff must allege
sufficient facts to state a plausible claim that her employer
took an adverse action against her because of her race or
national origin.  See, e.g., Patane v. Clark, 508 F.3d 106, 112
(2d Cir. 2007) (where plaintiff alleged gender discrimination
under Title VII, dismissal pursuant to Rule 12(b)(6) was proper
where the plaintiff "failed to plead any facts that would create
an inference that any adverse action taken by any defendant was
based upon her gender") (internal quotation marks and

                                15

alterations omitted).  "An adverse employment action is 'a
materially adverse <u>change</u> in the terms and conditions of
employment.'"  <u>Mathirampuzha v. Potter</u>, 548 F.3d 70, 78 (2d Cir
2008) (quoting <u>Sanders v. N.Y.C. Human Res. Admin.</u>, 361 F.3d
749, 755 (2d Cir. 2004)) (emphasis in original).

     The DJJ argues that Morales has not pleaded that she
suffered an adverse employment action, because the individual
acts of discrimination alleged do not amount to materially
adverse changes in the terms and conditions of Morales'
employment.

> "To be materially adverse a change in working conditions
> must be more disruptive than a mere inconvenience or an
> alteration of job responsibilities. A materially adverse
> change might be indicated by a termination of employment, a
> demotion evidenced by a decrease in wage or salary, a less
> distinguished title, a material loss of benefits,
> significantly diminished material responsibilities, or
> other indices . . . unique to a particular situation."
> <u>Galabya v. N.Y.C. Bd. of Educ.</u>, 202 F.3d 636, 640 (2d Cir.

2000) (internal quotation marks and citations omitted).  More
broadly, our Court of Appeals has explained that "a change in
responsibilities so significant as to constitute a setback to
the plaintiff's career" may constitute an adverse employment
action.  <u>Id.</u> at 641.  Moreover, in certain circumstances,
disciplinary charges can be considered adverse employment
actions.  <u>Compare</u> <u>Ayiloge v. City of New York</u>, No. 00 Civ. 5051,
2002 WL 1424589, at *12 (S.D.N.Y. June 28, 2002) (disciplinary
charges constituted adverse employment action where they "led to

one adverse finding, which may carry stigma and affect future employment") with Yerdon v. Henry, 91 F.3d 370, 378 (2d Cir. 1996) (disciplinary charges that were dismissed could not constitute adverse employment action).

Morales alleges, among other things, that she was forced to work overtime and to take breaks and meals last, that she was "written up" on baseless infractions, that she was falsely accused of sexual harassment, that she was, at one point, physically pushed and hurt, and that she was kept in a specific post which separated her from the control room. (TAC, at 4.)  It is unclear what disposition resulted from the various complaints against her.  While many of Morales's allegations do not rise to the level of an adverse employment action, these events could plausibly have done significant harm to Morales's career, and Morales's discrimination claim therefore cannot be dismissed on the pleadings as not pleading sufficient adverse employment actions.  Accordingly, the DJJ's motion is denied as to Morales's timely discrimination claims.

The DJJ also argues that the plaintiff has failed to state a retaliation claim.  To allege a prima facie case of retaliation, a plaintiff must allege that: (1) the plaintiff was engaged in a protected activity; (2) the defendant was aware of this activity; (3) the defendant took adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action, that is, that a

retaliatory motive played a part in the adverse employment action.  See Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993); accord Patane 508 F.3d at 115.  The DJJ argues that Morales has not alleged that she engaged in the type of "protected activity" against which retaliation is unlawful under Title VII.  However, Morales alleges that she did file a complaint with her employer relating to workplace discrimination, which is a protected activity under Title VII. See, e.g., Kotcher v. Rosa & Sullivan Appliance Ctr., Inc., 957 F.2d 59, 65 (2d Cir. 1992).  Indeed, the DJJ acknowledges Morales' allegation that, in at least one instance, she made a complaint about alleged "disrespect abuse and discrimination" in the workplace.  (TAC, at 4.).  The DJJ argues that this complaint was not filed in opposition to discrimination, but rather in opposition to work-related disciplinary action taken by Mickens-Hines, and Mickens-Hines' perceived "corruption." However, Morales's retaliation claims cannot be dismissed on the basis of such factual disputes at this stage in the litigation. Accordingly, the DJJ's motion is denied as to Morales's timely retaliation claims.

D.

The DJJ next argues that Morales's Equal Pay Act claims must be dismissed because they are time barred, and because Morales has failed to state a claim under the Equal Pay Act.

The Equal Pay Act provides a two-year statute of limitations, or three years for willful violations.  29 U.S.C. § 255(a).  Morales alleges that she was paid less than "Younger Afro-American Officers" between 2006 to 2008.  (TAC, at 4.)  She filed this lawsuit on February 3, 2010.  Therefore, at least some of her claims are time-barred.  In any case, the Equal Pay Act applies to wage discrimination "on the basis of sex," not on the basis of race or of age.  29 U.S.C. § 206(d)(1); see Ryduchowski v. Port Auth. of N.Y. and N.J., 203 F.3d 135, 142 (2d Cir. 2000).  That an employer "pays different wages to employees of the opposite sex" is a necessary element of a viable Equal Pay Act claim.  Id. (quoting Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999).  Morales does not allege that she was paid less than male officers.  Accordingly, the DJJ's motion is granted as to Morales' Equal Pay Act claims, and those claims are dismissed with prejudice.

E.

The DJJ next moves to dismiss Morales's HIPAA claim.  While Morales alleges that the DJJ violated HIPAA in reviewing her medical records, she does not dispute that HIPAA does not provide a private right of action.  See, e.g., Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of Am., 639 F. Supp. 2d 371, 377 (S.D.N.Y. 2009) (collecting cases).

The plaintiff claims that the DJJ's misuse of her medical records violated Title VII.  She argues that this alleged HIPAA

19

violation was "reasonably related" to the allegations in her NYSDHR Complaint (and thus is not barred as unexhausted) because the allegedly misused medical records had been released in the context of her NYSDHR proceeding.  This argument is meritless. The purpose of the exhaustion requirement is to put the employer on notice of the claims against it.  <u>Williams</u>, 458 F.3d at 70 ("The central question is whether the complaint filed . . . gave that agency "adequate notice to investigate discrimination on both bases.") (quotation marks and citation omitted).  Here, the relationship between the alleged HIPAA violation and the allegations in Morales's NYSDHR Complaint is not substantive, but rather based on the chain of events in the administrative hearing process.  Morales's filing of a complaint based on incidents of race and national origin discrimination could not have put the DJJ or the NYSDHR on notice that Morales also would complain of discrimination based on the subsequent, allegedly improper review of her medical records.  Her HIPAA claim, even if it were construed as a Title VII claim, is therefore unexhausted, and not properly before the Court.  Moreover, Morales fails to allege that the ostensible HIPAA violation constituted an adverse employment action based on a protected characteristic.  Accordingly, the DJJ's motion is granted as to Morales's HIPAA claims, and those claims are dismissed with prejudice.

F.

Finally, the DJJ argues that Morales' claims under the NYSHRL and NYCHRL must be dismissed because Morales elected her remedies by filing a complaint with the NYSDHR.  This argument is plainly correct.  "NY[S]HRL and [NY]CHRL claims, once brought before the NYSDHR, may not be brought again as a plenary action in another court."  York v. Ass'n of the Bar of the City of N.Y., 286 F.3d 122, 127 (2d Cir. 2002); see N.Y. EXEC. LAW § 297(9) ("Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . unless such person had filed a complaint hereunder or with any local commission on human rights."); N.Y.C. ADMIN. CODE § 8-502(a) ("[A]ny person claiming to be aggrieved by an unlawful discriminatory practice . . . shall have a cause of action in any court of competent jurisdiction for damages . . . unless such person has filed a complaint with the city commission on human rights or with the state division of human rights with respect to such alleged unlawful discriminatory practice.").  The bar against bringing claims already brought before the NYSDHR is jurisdictional and applies to subsequent claims brought in both state and federal court.  See Moodie v. Fed. Reserve Bank of N.Y., 58 F.3d 879, 884 (2d Cir. 1995).

Morales points out that a complaint that is dismissed for administrative convenience or untimeliness is not barred by

21

election of remedies.  However, Morales's NYSDHR Complaint was dismissed on the merits.  (See NYSDHR Decision, at 1 ("Because the evidence does not support the allegations, the complaint is dismissed.").)  Accordingly, the DJJ's motion is granted as to Morales' NYCHRL and NYSHRL claims, and those claims are dismissed with prejudice.

CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit.  The DJJ's motion to dismiss the Third Amended Complaint is **granted in part and denied in part**. The Clerk is directed to close **Docket No. 46**.

SO ORDERED.

Dated:    New York, New York
          January 20, 2012

John G. Koeltl
United States District Judge